IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CT-3361-M

STANLEY EARL CORBETT, JR.,                    )
                                              )
                Plaintiff,                    )
                                              )
        v.                                    )                ORDER
                                              )
JAMES HENRY CANDELARIO, CURTIS                )
MURRAY, JAMIE EMMANUEL                        )
HOLMES, OFFICER MIZZELLE, ISLAM               )
AYESH, OFFICER PERKINS, MR.                   )
HATLEY, OFFICER FISHER, OFFICER               )
HALE, and OFFICER GRANDY,                     )
                                              )
                Defendants.[1]                )

This matter is before the court on and defendants' motion for summary judgment pursuant

to Federal Rule of Civil Procedure 56 (D.E. 70) and plaintiff's motion for extension of time to

respond to defendants' motion for summary judgment (D.E. 86). For the reasons stated below,

plaintiff's motion is denied, and defendants' motion is granted in part and denied in part.

PROCEDURAL HISTORY

On December 2, 2019, plaintiff, a state inmate proceeding pro se, filed the instant action

pursuant to 42 U.S.C. § 1983 alleging defendants interfered with his mail, in violation of the First

and Fourteenth Amendments of the United States Constitution and Article I, Section 14 of the

North Carolina Constitution. (Compl. (D.E. 1) at 10–47). Plaintiff filed a verified complaint

---

[1]    The following formerly-named defendants were dismissed by court order on May 12, 2021: Erik Hooks,
Kenneth Lassiter, Dennis Daniels, John Herring, Mr. Burgess, Mr. Ballard, Mr. Artis, Mail Room Supervisor, G.
Barnes, K. Harris, E. Smith, Sgt. Horne, Sgt. Brounson, Sgt. Best, and Captain White.

accompanied by the following: 1.) prison grievance documents; 2.) photocopies of publications to which plaintiff has a subscription; 3.) an article by a North Carolina Prison Legal Services staff attorney; 4.) the North Carolina Department of Public Safety ("NCDPS") Division of Prisons Policy and Procedures regarding inmate mail; 5.) a photocopy of a petition written by plaintiff; 6.) mail notice to inmates from NCDPS; 6.) photocopies of envelopes received by plaintiff; 7.) declarations provided by plaintiff's fellow inmates. (Pl. Ex. (D.E. 1-1) at 1–51).

On May 12, 2021, the court conducted a frivolity review of the complaint and allowed the action to proceed against defendants James Henry Candelario ("Candelario"), Curtis Murray ("Murray"), Officer Mizzelle ("Mizzelle"), Officer Fisher ("Fisher"), Jamie Emmanuel Holmes ("Holmes"), Islam Ayesh ("Ayesh"), Officer Perkins ("Perkins"), Officer Hale ("Hale"), Officer Grandy ("Grandy"), and Mr. Hatley ("Hatley"). (May 12, 2021, Ord. (D.E. 17) at 4). Following an extended period of discovery, defendants filed the instant motion for summary judgment on October 14, 2022. (Mot. for Summ. J. (D.E. 70)). In support, defendants rely on a memorandum of law, statement of facts, and appendix of exhibits thereto including defendant Hatley's declaration, NCDPS Offender Public Information for plaintiff, and a list of plaintiff's infractions. That same day, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), plaintiff was provided notice of the motion for summary judgment and instructions for responding. (Roseboro Letter (D.E. 74)).

On November 9, 2022, plaintiff filed a motion for extension of time to respond, which the court granted. (First Mot. for Extension (D.E. 76); Nov. 9, 2022, Ord. (D.E. 78)). On December 16, 2022, plaintiff filed a second motion for extension of time, which was again granted by the court. (Second Mot. for Extension (D.E. 81); Dec. 16, 2022, Ord. (D.E. 82)). On January 20,

2

2023, plaintiff filed a third motion for extension of time, which the court granted. (Third Mot. for

Extension (D.E. 84); Jan. 23, 2023, Ord. (D.E. 85)). In the order granting the third extension of

time, the court warned plaintiff that it would not provide further extensions of the briefing deadline

absent extraordinary circumstances. (Jan. 23, 2023, Ord. (D.E. 85) at 1). On February 27, 2023,

plaintiff filed the instant fourth motion for extension of time to respond to defendants' motion for

summary judgment. (Fourth Mot. for Extension (D.E. 86)).

## STATEMENT OF THE FACTS

The facts, viewed in the light most favorable to plaintiff and drawn from his verified

complaint and attached exhibits, are summarized as follows.[2] Plaintiff sues defendants in both

their official and individual capacities. (Compl. (D.E. 1) at 8–9). While housed at Maury

Correctional Institution, ("Maury CI"), starting in January 2018, correctional staff confiscated mail

sent to plaintiff. (Id. at 13–14). For example, unnamed staff has refused to deliver the following:

1.) at least 10 issues of the San Francisco Bay View newspaper, a publication which covers prison

conditions, prisoner health and safety, and prisoner rights; 2.) at least 8 issues of News and Letters,

a Marxist newspaper; and 3.) at least 10 issues of Fast Company Magazine, a business-oriented

publication. (Id. at 14, 16–18; see also Attach. to Compl. (D.E. 1-1) at 3). Plaintiff was not

informed of the censorship or the reason for such censorship. (Compl. (D.E. 1) at 15, 17, 19, 34).

Plaintiff was not given the opportunity to appeal such censorship. (Id. at 15, 17, 19, 34).

The North Carolina Department of Public Safety's Policy and Procedures regarding

---

[2]    Where the court relies upon plaintiff's pleadings in the instant statement of facts, the court references
statements therein sworn or verified by plaintiff and other individuals. See Goodman v. Diggs, 986 F.3d 493, 498
(4th Cir. 2021) ("[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes,
when the allegations contained therein are based on personal knowledge.").

3

inmates' use of mail provides that incoming and outgoing mail will be held no more that 24 hours. (Pl.'s Ex., N.C. Dep't of Pub. Safety Div. of Prisons Policy & Procedures Chpt. D, § .0310(a)(1), (D.E. 1-1) at 24). If mail is censored, a disapproval letter must be sent to the inmate informing him of the reason for censorship, and he may appeal the censorship. (Id. § .0310(c)(2), at 27).

Plaintiff has submitted numerous grievances challenging the handling of his mail on the basis that it violated his First Amendment rights. (Compl. (D.E. 1) at 22–23; Attach. to Compl. (D.E. 1-1) at 3, 9). Plaintiff also posted a petition online regarding freedom of speech violations by correctional staff at Maury CI and other facilities. (Compl. (D.E. 1) at 23; Attach. to Compl. (D.E. 1-1) at 3, 9). Defendants Candelario, Murray, Mizzelle, Fisher, Holmes, Ayesh, and Perkins retaliated against plaintiff for filing grievances and posting the petition by denying him his mail or delivering his mail to other inmates. (Compl. (D.E. 1) at 23–24).

On June 27 and July 3, 2018, defendant Hale delivered a photocopy of an addressed envelope to plaintiff. (Id. at 29–30). Plaintiff asked about the whereabouts of the letter. (Id. at 29–30). Hale responded for plaintiff to contact the mailroom and stated other inmates were experiencing the same problem. (Id. at 29–30). On July 12, 2018, defendant Grandy again delivered a photocopy of an addressed envelope without the contents and instructed plaintiff to direct complaints to the mailroom. (Id. at 30). On July 31 and August 18, 2018, defendant Hale again delivered photocopies of an addressed envelope without the contents. (Id. at 30–31). Plaintiff inquired about problems receiving his mail, and Hale suggested plaintiff contact the mailroom or file a grievance. (Id. at 31).

On October 24, 2018, defendant Candelario delivered plaintiff's mail to inmate Presley Parks ("Parks"). (Compl. (D.E. 1) at 24; Pl. Ex., Parks Decl. (D.E. 1-1) at 42). Parks informed

4

Candelario that it was plaintiff's mail. (Compl. (D.E. 1) at 24; Pl. Ex., Parks Decl. (D.E. 1-1) at 42). Candelario responded, "[F]uck [plaintiff.] [H]e'll be alright do whatever you want with it." (Compl. (D.E. 1) at 24; Parks Decl. (D.E. 1-1) at 42). Parks returned the mail to Candelario, and Candelario responded, "[Plaintiff's] not getting this letter[.] [Y]ou need to tell him to stop writing petitions [and] complaints [ ] if he wants to get his mail." (Compl. (D.E. 1) at 24; Pl. Ex., Parks Decl. (D.E. 1-1) at 42). Plaintiff never received the letter. (Compl. (D.E. 1) at 24).

On October 29, 2018, defendant Murray handed inmate Thomas Coleman ("Coleman") plaintiff's mail. (Compl. (D.E. 1) at 25; Pl. Ex., Coleman Decl. (D.E. 1-1) at 43). Coleman stated the mail was not his, and Murray responded, "Keep it or throw it away[.] [F]uck [plaintiff]! He shouldn't be writing petitions on staff. If you give it back to me, [I'm going to] throw it away." (Compl. (D.E. 1) at 25; Pl. Ex., Coleman Decl. (D.E. 1-1) at 43). Coleman returned the letter, and Murray threw it away. (Compl. (D.E. 1) at 25; Pl. Ex., Coleman Decl. (D.E. 1-1) at 43).

On November 8, 2018, defendant Candelario gave inmate Radonta D. Williams ("Williams") two of plaintiff's letters. (Compl. (D.E. 1) at 24; Pl. Ex., Williams Decl. (D.E. 1-1) at 44). Williams informed Candelario that the letters were not his. (Compl. (D.E. 1) at 24; Pl. Ex., Williams Decl. (D.E. 1-1) at 44). Candelario responded, "Flush it[;] throw it away; I don't give a damn[.] [Plaintiff] shouldn't be putting petitions on us." (Compl. (D.E. 1) at 24; Pl. Ex., Williams Decl. (D.E. 1-1) at 44). Williams gave the letters back to Candelario, and Candelario threw them in the trash. (Compl. (D.E. 1) at 24; Pl. Ex., Williams Decl. (D.E. 1-1) at 44).

On November 30, 2018, defendant Mizzelle gave inmate Joshua R. Mace ("Mace") plaintiff's mail. (Compl. (D.E. 1) at 25; Pl. Ex., Mace Decl. (D.E. 1-1) at 45). When Mace informed Mizzelle the letter was not his, Mizzelle stated, "[F]uck [plaintiff and] that letter[.]

5

[G]ive it back to me. I bet his ass won't get it. All that paperwork he['s] putting on us[.] [H]e damn sure won't get it. Now, tell him that." (Compl. (D.E. 1) at 25; Pl. Ex., Mace Decl. (D.E. 1-1) at 45).

On March 22, 2019, defendant Fisher gave inmate A. Johnson ("Johnson") plaintiff's incoming mail. (Compl. (D.E. 1) at 25; Pl. Ex., Johnson Decl. (D.E. 1-1) at 47). Johnson gave the letter to another inmate who delivered it to plaintiff. (Compl. (D.E. 1) at 25–26; Pl. Ex., Johnson Decl. (D.E. 1-1) at 47). When the letter was finally delivered to plaintiff, it had been ripped in half. (Compl. (D.E. 1) at 26).

On or about May 1, 2019, defendant Holmes delivered plaintiff's mail to inmate William Stout ("Stout"). (Id.; Pl. Ex., Stout Decl. (D.E. 1-1) at 48). Stout informed Holmes the letter was not his. (Compl. (D.E. 1) at 26; Pl. Ex., Stout Decl. (D.E. 1-1) at 48). Stout returned the letter to prison staff, but the letter was never delivered to plaintiff. (Compl. (D.E. 1) at 26; Pl. Ex., Stout Decl. (D.E. 1-1) at 48). On June 3, 2019, defendant Holmes delivered plaintiff's incoming mail to inmate Shawn Faulk ("Faulk"). (Compl. (D.E. 1) at 26; Pl. Ex., Faulk Decl. (D.E. 1-1) at 49). When Faulk informed Holmes the letter was not his, Holmes responded, "[F]uck [plaintiff.] [T]hat mutha fucka is the one writing grievances and petitions on me [and] the rest of us. He doesn't get any mail from me." (Compl. (D.E. 1) at 26–27; Pl. Ex., Faulk Decl. (D.E. 1-1) at 49). Plaintiff did not receive the letter. (Compl. (D.E. 1) at 27).

On or about June 5, 2019, defendant Ayesh gave inmate David Chambers ("Chambers") plaintiff's mail. (Id.; Pl. Ex., Chambers Decl. (D.E. 1-1) at 50). Chambers returned the letter to Ayesh, and Ayesh threw the letter in the trash. (Compl. (D.E. 1) at 27; Pl. Ex., Chambers Decl. (D.E. 1-1) at 50).

6

On July 5, 2019, defendant Perkins gave plaintiff's incoming mail to inmate Timothy Uzzell. (Compl. (D.E. 1) at 27; Pl. Ex., Uzzell Decl. (D.E. 1-1) at 51). Uzzell returned the letter to Perkins. (Compl. (D.E. 1) at 27; Pl. Ex., Uzzell Decl. (D.E. 1-1) at 51). When Perkins later returned, Uzzell asked Perkins why he did not deliver to the letter to plaintiff. (Compl. (D.E. 1) at 27; Pl. Ex., Uzzell Decl. (D.E. 1-1) at 51). Perkins responded, "Fuck him [and] his mail[.] [T]ell him to stop writing grievances." (Compl. (D.E. 1) at 27; Pl. Ex., Uzzell Decl. (D.E. 1-1) at 51).

On November 4, 2019, plaintiff saw defendant Hatley, a correctional staff member that monitors and censors gang members' mail, with a cart of mail from the segregation units. (Compl. (D.E. 1) at 32–33; see also Def. Ex., Hatley Decl. (D.E. 73-1) ¶ 7). Plaintiff stopped Hatley and asked why he was having problems receiving his mail. (Compl. (D.E. 1) at 33). Hatley responded that he did not work in the mail room and did not deliver mail. (Id.; see also Def. Ex., Hatley Decl. (D.E. 73-1) ¶¶ 6–9).

## COURT'S DISCUSSION

A.     Motion for Extension of Time (D.E. 86)

The court begins with plaintiff's motion for extension of time to respond to defendants' motion for summary judgement. "[T]he court may, for good cause, extend the time . . . with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires." Fed. R. Civ. P. 6(b)(1). Responses to non-discovery motions must be filed "within 21 days of service of the motion in question unless otherwise ordered by the court." Local Civ. R. 7.1(f)(1).

As previously noted, defendants filed their motion for summary judgment on October 14, 2022. (Defs. Mot for Summ. J. (D.E. 70)). A Roseboro notice was issued that same day.

7

(Roseboro Letter (D.E. 74)). Plaintiff has filed four separate motions for extension of time to respond to defendants' motion for summary judgment largely on the basis that he did not have access or prison officials denied him access to his legal materials. (First Mot. for Extension (D.E. 76); Second Mot. for Extension (D.E. 81); Third Mot. for Extension (D.E. 84); Fourth Mot. for Extension (D.E. 86)). The court granted plaintiff's first three motions (granting 30 days, 31 days, and 21 days, respectively). (Nov. 9, 2022, Ord. (D.E. 78); Dec. 16, 2022, Ord. (D.E. 82); Jan. 23, 2023, Ord. (D.E. 85)). Regarding the third motion for extension of time, plaintiff was warned additional extensions would not be granted absent extraordinary circumstances. (Jan. 23, 2023, Ord. (D.E. 85)).

Plaintiff filed his fourth motion for extension of time on February 27, 2023. (Fourth Mot. for Extension (D.E. 86) (signed and dated February 12, 2023)). Plaintiff seeks an extension on the basis that his cousin died recently, and he was transferred from Central Prison to Tabor Correctional Institution on January 27, 2023. (Id. at 2). Plaintiff alleges several items of personal property were confiscated prior to his transfer, including documents he had prepared in response to defendants' motion for summary judgment. (Id.). Plaintiff noted he submitted a grievance concerning his missing property and included a copy of said grievance with his motion. (Id.; see Pl.'s Ex. (D.E. 86-1) at 1–3). Plaintiff does not explain what specific documents were confiscated or how such documents were required for him to respond to the motion for summary judgment. Moreover, as plaintiff was transferred on January 27, 2023, he had an additional 17 days to redraft any documents prior to the expiration of the deadline. Plaintiff has had a total of at least 100 days to respond to defendants' motion. The court finds plaintiff has not sufficiently demonstrated that extraordinary circumstances exist supporting extension of the briefing deadline. Accordingly,

8

plaintiff's motion for extension of time to respond is denied.

B.      Defendant's Motion for Summary Judgment (D.E. 70)

      1.      Legal Standard

Summary judgment is appropriate when, after reviewing the record as a whole, the court

determines that no genuine issue of material fact exists, and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a

genuine issue of material fact or the absence of evidence to support the nonmoving party's case.

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the

nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S.

at 247–48, but "must come forward with specific facts showing that there is a genuine issue for

trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and

quotation omitted). To determine whether a genuine issue of material fact exists for trial, the court

views the evidence and the inferences drawn therefrom in the light most favorable to the

nonmoving party. See Scott v. Harris, 550 U.S. 372, 378 (2007).

      2.      Analysis

         a.      Official Capacity Claims

To the extent plaintiff alleges official capacity claims for monetary damages against

defendants, such claims are barred by the Eleventh Amendment. Eleventh Amendment immunity

extends to state officers or agents acting in their official capacities. Gray v. Laws, 51 F.3d 426,

430 (4th Cir. 1995) (citing Will v. Michigan Dep' t of State Police, 491 U.S. 58, 71 (1989)).

Moreover, state officials acting in their official capacities are not subject to suit under § 1983.

9

Will, 491 U.S. at 71. Accordingly, plaintiff's official capacity claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).[3]

        b.      Remaining Claims

As previously noted, plaintiff alleges defendants Candelario, Murray, Holmes, Mizzelle, Ayesh, Perkins, Hatley, Fisher, Hale, and Grandy violated his First Amendment right to receive personal mail. (Compl. (D.E. 1) at 24–27). Plaintiff brings this claim as both a stand-alone claim and as a retaliation claim asserting that defendants retaliated against him, in part, for filing grievances against them. (Compl. (D.E. 1) at 23–24).

An inmate "has a First Amendment interest in sending and receiving mail." Matherly v. Andrews, 859 F.3d 264, 280 (4th Cir. 2017); Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999). However, deference is accorded to the "day-to-day judgment of prison officials," and a prison's policy or practice impinging upon an inmate's constitutional rights is "valid if it is reasonably related to legitimate penological interests." Haze v. Harrison, 961 F.3d 654, 658 (4th Cir. 2020); see also Turner v. Safley, 482 U.S. 78, 89 (1987) ("[A] regulation is valid if it is reasonably related to legitimate penological interests."). Isolated instances of mail being mishandled accidentally or as "the result of unauthorized subordinate conduct" do not rise to the level of a constitutional violation. Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983); Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation.").

To succeed on his First Amendment retaliation claim, plaintiff must show that: 1) he

---

[3]    Section 1915(e)(2) provides that where the plaintiff proceeds in forma pauperis, the court may dismiss the action "at any time" if it determines the plaintiff has failed to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

engaged in protected First Amendment activity; 2) defendants took action that adversely affected that activity; and 3) a causal relationship exists between the protected activity and defendants' conduct. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017); see also Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005). "[A] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Constantine, 411 F.3d at 500 (internal quotation marks omitted). To satisfy the causal element, a plaintiff must show that defendants knew plaintiff engaged in protected activity and that there is "some degree of temporal proximity" between the protected activity and the alleged retaliation. Id. at 501. Inmates have a protected First Amendment right to be free from retaliation for filing a grievance under existing prison procedure. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 540–41 (4th Cir. 2017).

In their motion for summary judgment, defendants contend the following: 1.) the isolated incidents of their unauthorized subordinate conduct in refusing to deliver plaintiff's mail does not rise to the level of a constitutional violation; 2.) plaintiff is not entitled to compensatory damages; and 3.) defendants are shielded by qualified immunity.[4] (Defs. Mem. in Supp. (D.E. 71) at 11–14).

Plaintiff has produced evidence of more than merely "isolated" incidents of non-delivery of his mail. Instead, plaintiff presented evidence that defendants mishandled, destroyed, or delayed plaintiff's mail intentionally and in retaliation for plaintiff filing grievances. As addressed above, plaintiff submitted several declarations from other inmates in support of his verified complaint. These declarations state that defendants Candelario, Murray, Mizzelle, Holmes, and Perkins made

---

[4]     Defendants do not directly address plaintiff's retaliation claims in their motion for summary judgment.

11

statements directly relating their refusal to deliver mail to plaintiff to his engagement in the grievance process. (Pl. Ex., Parks Decl. (D.E. 1-1) at 42; Pl. Ex., Coleman Decl. (D.E. 1-1) at 43; Pl. Ex., Williams Decl. (D.E. 1-1) at 44; Mace Decl. (D.E. 1-1) at 45; Faulk Decl. (D.E. 1-1) at 49; Pl. Ex., Uzzell Decl. (D.E. 1-1) at 51). Plaintiff also swore under penalty of perjury in his complaint that he was missing mail, and he received photocopies of envelopes without the contents. (Compl. (D.E. 1) at 14, 16–18, 24, 26–27, 29–31, 33). Defendants do not dispute plaintiff's evidence. If plaintiff's evidence is believed, such conduct on the part of defendants Candelario, Murray, Mizzelle, Holmes, and Perkins violates plaintiff's First Amendment right to receive mail and constitutes retaliation against plaintiff for filing grievances. See LaKemper v. Solomon, No. 5:17-cv-73-FDW, 2019 WL 1382503, at *7–8 (W.D.N.C. Mar. 27, 2019) (finding that plaintiff had demonstrated a genuine issue of material fact where he submitted his own sworn affidavit and affidavits of fellow inmates demonstrating defendant prison officials mishandled or destroyed at least 23 pieces of plaintiff's mail in retaliation for filing a grievance).

The court also finds defendants Candelario, Murray, Mizzelle, Holmes, and Perkins are not entitled to qualified immunity. "To overcome an official's claim of qualified immunity, the plaintiff must show: '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" Attkisson v. Holder, 925 F.3d 606, 623 (4th Cir. 2019) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). Because there are genuine issues of material fact as to plaintiff's claims against these defendants, the present record precludes a qualified immunity finding on summary judgment. See Tolan v. Cotton, 572 U.S. 650, 655–66 (2014); Brooks v. Johnson, 924 F.3d 104, 119 (4th Cir. 2019).

However, plaintiff has failed to demonstrate that the actions of defendants Hale, Grandy,

12

Hatley, Fisher, and Ayesh rise to the level of constitutional violations. The evidence merely shows that these defendants either failed to deliver a letter to plaintiff in isolated instances or plaintiff merely made inquiries regarding issues with his mail. (See Compl. (D.E. 1) at 25–27, 29–31, 33; Pl. Ex., Johnson Decl. (D.E. 1-1) at 47; Chambers Decl. (D.E. 1-1) at 50). Plaintiff further provides no evidence supporting that such non-delivery was related to plaintiff filing grievances against prison staff. Accordingly, plaintiff has failed to demonstrate a genuine issue of material fact as to defendants Hale, Grandy, Hatley, Fisher, and Ayesh.

Regarding defendant's argument regarding damages, defendant contends plaintiff is not entitled to compensatory damages because he cannot demonstrate he suffered actual damages as a result of the alleged actions of any defendant. (Def. Mem. in Supp. (D.E. 71) at 13). "[T]he infringement of [an inmate's] First Amendment rights *itself* constitutes an injury." Haze, 961 F.3d at 660. Further, plaintiff has demonstrated both "but-for and proximate causation" between the actions of defendants Candelario, Murray, Mizzelle, Holmes, and Perkins, and plaintiff's injury. See Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) ("[C]onstitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation."). Because plaintiff has demonstrated a genuine issue of material fact as to the violation of his constitutional rights by defendants Candelario, Murray, Mizzelle, Holmes, and Perkins, the court denies defendants motion regarding compensatory damages at this time.

## CONCLUSION

For the reasons discussed herein, the court DENIES plaintiff's motion for extension of time (D.E. 86). Plaintiff's official capacity claims are DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B). Defendants' motion for summary judgement (D.E. 70) is GRANTED IN PART

AND DENIED IN PART as provided above. Defendants' motion is granted as to plaintiff's claims against defendants Hale, Grandy, Hatley, Fisher, and Ayesh, and such claims are dismissed with prejudice. Defendants' motion is DENIED in all other respects.

The court REFERS this action to United States Magistrate Judge Robert B. Jones, Jr. for a court-hosted settlement conference. The court further APPOINTS North Carolina Prisoner Legal Services, Inc. ("NCPLS") for the limited purpose of assisting plaintiff in the court-hosted settlement conference. See Standing Order 21-SO-11 at ¶7.

SO ORDERED, this the 14th day of ___March___, 2023.

_____Richard E Myers II_____
RICHARD E. MYERS, II
Chief United States District Judge

14